## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

SHAKAYLA DAVIS, as Personal Representative )
of the Estate of RICKY DAVIS, deceased,        )
                                                             )
                     Plaintiff,                          )
                                                             )
v.                                                          )          Case No. 22-CV-320-DES
                                                             )
CITY OF MUSKOGEE, OKLAHOMA;           )
ROBERT "BOB" LYNCH;                          )
and JEREMY JENKINS,                            )
                                                             )
                     Defendants.                      )

## <u>OPINION AND ORDER</u>

This matter comes before the Court on Defendant Jeremy Jenkins' ("Defendant Jenkins'

or "Sergeant Jenkins") Motion for Summary Judgment and Brief in Support (Docket No. 42). On

April 10, 2025, a Hearing on this Motion was held where both counsel for Plaintiff and Defendant

Jenkins were given the opportunity to present oral argument. (Docket No. 72).  For the reasons set

forth below, Defendant Jenkins' Motion for Summary Judgment is GRANTED.

     I.        Background

Plaintiff's allegations stem from an incident where Ricky Davis ("Mr. Davis"), following

a call to him accusing his minor daughter, Shalayna Davis, of stealing money and threatening

imminent harm to her, drove to his daughter's location, called 9-1-1, and told the dispatcher that

two women were assaulting his daughter. (Docket No. 2 at 4). Plaintiff alleges that when Mr. Davis

arrived at the scene, his daughter was running down the street and got into his car. *Id.* at 5. Although

Mr. Davis initially drove away, he returned to the scene to retrieve his daughter's purse and phone.

*Id.* It was upon this return that Plaintiff alleges the same individuals who assaulted Mr. Davis'

daughter began assaulting Mr. Davis and threatened to kill him and his family. *Id.* Plaintiff alleges

Mr. Davis had a concealed carry license, was carrying a firearm, and loudly told these individuals that he had a gun and warned them to get back. *Id.* It was at this point that Officer Robert Lynch ("Officer Lynch") from Muskogee Police Department arrived[1] and told Mr. Davis to "drop the gun!", which Mr. Davis did. *Id.* Officer Lynch then told Mr. Davis to "get on the ground!" *Id.*

Plaintiff alleges, this order to "get on the ground" caused Mr. Davis to pause. In September 2017, Plaintiff alleges Mr. Davis underwent a kidney transplant procedure that required extended hospitalization. *Id.* at 3. In October 2017, Plaintiff further alleges Mr. Davis was injured in a car accident that caused a kidney infection and required another surgery. *Id.* Plaintiff alleges, due to his "history of dialysis, injections and IVs in his left forearm" an AV fistula and shunt was placed in Mr. Davis's forearm in March 2018. *Id* at 4. Once Officer Lynch ordered Mr. Davis to "get on the ground," Plaintiff alleges Mr. Davis said he could not get on the ground "due to his kidney transplant," to which Officer Lynch responded he did not care and repeated his command for Mr. Davis to get on the ground. *Id.* at 5-6. Plaintiff alleges Mr. Davis was fearful of being shot so he got on the ground. *Id*. at 6. At this point, Sergeant Jenkins arrived on the scene and he and Officer Lynch proceeded to handcuff Mr. Davis. *Id*. Plaintiff alleges Mr. Davis told the officers that he could not have his left arm cuffed behind his back because it was restricted with medical devices and because he had a kidney transplant. *Id.* Plaintiff alleges Sergeant Jenkins placed Mr. Davis inside a squad car with his arms cuffed behind his back, which caused more pain and pressure on the AV fistula and shunt. *Id.* at 7. Plaintiff alleges Mr. Davis had difficulty breathing because the squad car had no air conditioning. *Id.* After approximately forty-five (45) minutes, Plaintiff alleges Mr. Davis was allowed to get out of the squad car and his handcuffs were removed. *Id.* Plaintiff alleges Mr. Davis's AV fistula was "visibly swollen, disfigured and protruding from his arm" and

---

[1] Plaintiff disputes that Mr. Davis was pointing or waiving his gun at anyone on the scene, however, the body camera footage shows Mr. Davis was waiving his gun around as Officer Lynch arrived on the scene.

that an EMT spoke to Mr. Davis about his medical history and looked at his left arm. *Id.* Plaintiff alleges Mr. Davis returned home but presented to the hospital later that evening due to arm swelling and significant pain. *Id.* Plaintiff claims, it was later determined that the AV fistula in his left arm had "burst . . . . requiring[ing] additional invasive surgical intervention to repair the damaged fistula and further hospitalization." *Id.*

Plaintiff, Shakayla Davis, daughter of Mr. Davis and Personal Representative of the Estate of Ricky Davis, filed this action on November 15, 2022 alleging: (1) excessive use of force in violation of the Fourth and/or Fourteenth Amendment and 42 U.S.C. § 1983 against all Defendants, (2) negligence against Defendant City of Muskogee ("Defendant City"), (3) violation of the Americans with Disabilities Act ("ADA") against all Defendants, and (4) deliberate indifference to a serious medical need in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 against all Defendants. (Docket No. 2).

II.    Defendants' Statement of Material Facts and Plaintiff's Responses

On September 19, 2024, Officer Lynch filed his Motion for Summary Judgment ("MSJ") including a list of forty-one (41) material undisputed facts ("MUFS") pursuant to LCvR 56.1(b). (Docket No. 41). On the same day, Defendant Jenkins filed his own Motion for Summary Judgment and adopted all the MUFS included in Officer Lynch's MSJ. (Docket No. 42 at 7). Defendants' MUFS No. 4 indicates, Officer Lynch was dispatched to a disturbance where he encountered "a chaotic scene with a crowd of people yelling and screaming at each other with someone holding a stick and swinging it about as a weapon." (Docket No. 41 at 13). Officer Lynch drew his taser and stated, "hey, hey, drop it, drop it right now." *Id.* The crowd continued to yell and scream at each other, so Officer Lynch ordered them to "shut up! be quiet, be quiet." *Id.* But despite his orders, the crowd continued to yell and scream at each other." *Id.* While Plaintiff admits Defendants'

MUFS No. 4, she provides her own additional facts regarding the activities that occurred prior to police arriving on the scene. (Docket No. 50 at 5).

Defendants' MUFS No. 5 indicates Officer Lynch then saw Mr. Davis with a gun in his right hand, which he moved in an upward motion at a woman standing inches from him. (Docket No. 41 at 13). He instructed Mr. Davis to "Hey! Hey! put that – drop that gun! drop the gun now!" *Id.* Mr. Davis did not comply right away, so Officer Lynch again stated "drop the gun now! Drop the gun now!" *Id.* Plaintiff denies that Mr. Davis "ever pointed his gun at anyone." (Docket No. 50 at 5). Plaintiff further disputes that Mr. Davis did not comply with Officer Lynch's order to drop the gun, claiming that he complied within 3 seconds of such order. *Id.* Plaintiff further claims that prior to dropping the gun, Mr. Davis "removed the magazine or clip." *Id.* Defendants' MUFS No. 6 states Officer Lynch additionally ordered Mr. Davis to "Get on the ground! Get on the ground! Get on the ground now." (Docket No. 41 at 13). "Mr. Davis then got on the ground, flat on his stomach with his upper body off the ground supported by the weight of his arms as he laid there without saying anything as Officer Lynch was trying to get control of the situation." *Id.* Defendants' MUFS Nos. 7-9 indicate, while officer Lynch was dealing with the other individuals on the scene, additional officers including Sergeant Jenkins arrived. *Id.* at 14. Defendants' MUFS No. 10 stated, Mr. Davis, while still laying on the ground, shifted his weight on his left side and leaned up with his right side to speak with the officers who were standing next to him. *Id.* at 5-6. Plaintiff disputes this recitation of facts and claims instead that Mr. Davis was "holding his head up and evenly balancing himself with both elbows." (Docket No. 50 at 6). Mr. Davis only raised his right hand for "approximately 2 seconds, while putting weight on his left elbow." *Id.*

Defendants' MUFS No. 11 states that Sergeant Jenkins approached Mr. Davis who rolled flat on his stomach while Sergeant Jenkins "calmly ordered him, 'put your hands behind your

back.'" (Docket No. 41 at 15). Mr. Davis then "shift[ed] his weight to his right side and put his left arm behind his back to be handcuffed and then put his right arm behind his back and rolled to his right side while Sergeant Jenkins handcuffed him." *Id.* Plaintiff disputes the suggestions that Sergeant Jenkins was clam or professional in his dealings with Mr. Davis. (Docket No. 50 at 6). She further argues (even though Defendants' MUFS No. 11 did not address this) that from Sergeant Jenkins' body camera footage, a mass on Mr. Davis's wrist is seen while Sergeant Jenkins places handcuffs, and while there is no audio on Sergeant Jenkins' body camera footage, Sergeant Jenkins can be seen "touch[ing] the mass on Mr. Davis's left wrist and pull[ing] back on it." *Id.* Plaintiff argues this is proof that Sergeant Jenkins was aware of Mr. Davis's AV fistula. *Id.* Defendants' MUFS No. 14 states, "[o]nce the handcuffs were on Mr. Davis, Sergeant Jenkins allowed him to continue to lay on his right side, although the others on the ground were lying flat, while Sergeant Jenkins put his fingers in between the handcuffs to make sure they were loose on Mr. Davis and then he double locked them to ensure they would not tighten up on him. Although Mr. Davis had a fistula in his arm due to his kidney transplant, this was unknown to Sergeant Jenkins as you could not see it from the back of his arm and Mr. Davis said nothing about having a fistula in his arm that needed to be protected. He only informed Sergeant Jenkins, 'Man, I got a kidney transplant'. Sergeant Jenkins did notice something on Mr. Davis's left forearm but he believed it to be a cyst, or a deformity of some kind, or a growth, or an abnormality between his elbow and forearm. Mr. Davis said nothing to him or anyone else around that it was a fistula that needed to be protected." (Docket No. 41 at 15-16). Plaintiff disputes all of Defendants' MUFS No. 14 other than the fact that Mr. Davis told Sergeant Jenkins that he had a kidney transplant to which Sergeant Jenkins replied, "I don't care, I'm not touching your damn kidney." (Docket No. 50 at 7).

Defendants' MUFS No. 18 indicates, Officer Lynch then assisted Sergeant Jenkins in lifting Mr. Davis from the ground into a standing position. (Docket No. 41 at 17). While not overtly stated in Defendants' MUFS No. 18, Plaintiff denies "the suggestion that Sergeant Jenkins and Officer Lynch caused no damage to Mr. Davis when they lifted him up off the pavement." (Docket No. 50 at 7). Defendants' MUFS No. 19 states, Mr. Davis told Sergeant Jenkins he could not sit on his back in the car due to his "kidney transplant," to which Sergeant Jenkins responded, "well you can sit in there sideways or something." (Docket No. 41 at 17)*.*  Defendants' MUFS No. 21 indicates, Mr. Davis requested his handcuffs be moved from behind him to his front, to which Sergeant Jenkins responded, "[w]e can't do that." *Id.* at 17-18. Defendants' MUFS No. 23 indicates, while Mr. Davis did tell Sergeant Jenkins that he could not put his arms behind his back, he did not tell Sergeant Jenkins why. *Id.* at 18. Plaintiff, in response, "denies the suggestion that Mr. Davis was required, under the circumstances, to explain why he couldn't have his arms behind him." (Docket No. 50 at 8). She also argues that Sergeant Jenkins "already knew that Mr. Davis: (A) had kidney transplant; and (B) had a fistula in his wrist or forearm." *Id.* Defendants' MUFS No. 25 states, after sitting in a patrol car for approximately seven minutes Mr. Davis told another officer on scene, Officer Bemo, that he "had renal failure, had a kidney transplant, and that he needed some water." (Docket No. 41 at 18). Officer Bemo requested an ambulance to come check on Mr. Davis. *Id.* Plaintiff admits the facts contained in Defendants' MUFS No. 25 but adds that while asking for water, Mr. Davis was in obvious distress and "had genuine panic in [his] voice" to which "Officer Bemo[2] was utterly dismissive." (Docket No. 50 at 8).

Defendants' MUFS No. 26 states, "[a]t approximately eight minutes after having been put into the patrol car, Mr. Davis (for the first time) announced only to Officer Bemo, 'I've got that

---

[2] Officer Bemo is not a named Defendant. Plaintiff does not allege any claims against him.

fistula on my arm and you ain't supposed to have nothing on there. You ain't supposed to have nothing restricting it . . .'" (Docket No. 41 at 19). Plaintiff only "disputes the assertion that Bemo was the first officer who Mr. Davis notified of his fistula." (Docket No. 50 at 9). Defendants' MUFS No. 27 indicates that Officer Bemo explained to Mr. Davis why he had to be handcuffed, which Mr. Davis seemed to understand, stating, "I know, give me water, I'm fine with the handcuffs, just give me some water." (Docket No. 41 at 19). Plaintiff admits this MUFS but indicates that it omits pertinent facts. (Docket No. 50 at 9).

Defendants' MUFS No. 32 indicates "Mr. Davis then stated to Officer Bemo regarding his handcuffs, 'I need this thing off my wrist.'" (Docket No. 41 at 20). Officer Bemo, having determined what had happened and being assured that Mr. Davis was not a threat, responded, "can – can you sit down if I take them off?" *Id.* Mr. Davis agreed, and Officer Bemo patted him down for officer safety and removed the handcuffs. *Id.* Mr. Davis stated, ***"I need water more than anything, sir."*** *Id.* Officer Bemo then asked another officer to get Mr. Davis's bottled water out of his car, although he did ask Mr. Davis, "ain't nothing crazy in it, is there?" Mr. Davis responded that he "can't take no crazy stuff. I got a kidney transplant." *Id.* The other officer brought Mr. Davis his bottled water and Mr. Davis continued to explain what happened at the scene. *Id.* Officer Bemo informed dispatch that Mr. Davis has "some kidney issues. He said he just needed some water . . ." *Id.* Again, Plaintiff admits this MUFS is factually correct but indicates that it omits pertinent facts. (Docket No. 50 at 9).

Defendants' MUFS No. 34 states that EMS personnel asked Mr. Davis if he wanted to go to the hospital multiple times and he responded, "I'm okay. I just had ten minutes to release this arm." "I'm okay man. I just had to sit here for a few minutes. I'm okay." (Docket No. 41 at 21). When EMS asked Mr. Davis if he was hurt, Mr. Davis responded, "I just need – I just got too

sweaty and I told him I can't (unintelligible). . . . I said, you can't put no cuffs on me. I'm not – no threat. And he kept on putting them behind my back anyway." *Id.* Plaintiff "vehemently disputes" the assertion that Mr. Davis did not tell Sergeant Jenkins that he had a fistula on his arm and only told him he was "not a threat." (Docket No. 50 at 10). Plaintiff further disputes that Mr. Davis made no medical complaints to EMS, and notes that body camera footage shows the "fistula on Mr. Davis's left arm was obviously and extremely swollen." *Id.* Defendants' MUFS No. 35 indicates that while Mr. Davis refused medical treatment or to be taken to the hospital at the scene, he did present at Wagoner Community Hospital emergency room later that evening. *Id.* Medical records indicate he had "minor abrasions to his knee and wrists and soft tissue swelling at his fistula." (Docket No. 41 at 21). Defendants' MUFS No. 35 further states that "Mr. Davis's past medical records show that Plaintiff's fistula was inserted in 2014. [S]ix months before this incident Mr. Davis had undergone a fistulagram to widen the artery due to stenosis . . . . The medical records reflect that at that time he was 'not using the fistula now due to his renal transplant one year ago.' Following the incident, on September 24, 2018, Plaintiff underwent the same procedure again due to the stenosis in his artery. Thereafter, he had several fistulagrams and eventually had the fistula removed since it was not necessary, due to his functioning kidneys." *Id.* Plaintiff "disputes any suggestion that Mr. Davis's subsequent procedures on the fistula were unrelated to the use[ ] of police force on September 18, 2018"; however, rather than citing to any medical records, Plaintiff references Mr. Davis's own verified answers to interrogatories and photographs as evidence. (Docket No. 51 at 10). Plaintiff does reference Mr. Davis's medical records in her "Additional Facts Precluding Summary Judgment" where she notes, "Mr. Davis presented to Wagoner County Community Hospital complaining that 'he was handcuffed by Muskogee Police and handcuff to left wrist caused fistula to swell and become painful.'. . . A physical examination

at the hospital showed that Mr. Davis's left forearm was 'tender with fistula in place obvious thrill'[3] and 'left knee with multiple abrasions . . .'" *Id.* at 12.

Defendants' MUFS No. 39 indicates that Mr. Davis never told Sergeant Jenkins he had an arm fistula or medical device that could not be restricted, and Sergeant Jenkins "believed that Mr. Davis had a cyst or other abnormality or deformity on his arm." (Docket No. 41 at 22). Plaintiff specifically disputes this assertion. (Docket No. 50 at 10). Defendants' MUFS No. 40 states, "Mr. Davis was in handcuffs for a total of fifteen minutes and fifteen seconds." (Docket No. 41 at 22). Plaintiff does not dispute Defendants' MUFS No. 40. (Docket No. 50 at 11).

    III.    Analysis

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, and the Court draws all reasonable inferences in favor of the nonmovant. *Georgelas v. Desert Hill Ventures, Inc.,* 45 F.4th 1193, 1197 (10th Cir. 2022). The nonmovant must then make a showing sufficient to establish an inference of the existence of each element essential to his case. *Bolden v. PRC, In*c., 43 F.3d 545, 548 (10th Cir. 1994). "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim

---

[3] A correctly functioning fistula has a bruit (a pulse that you can hear) and a thrill (a pulse that can be felt). A bruit and thrill are normal findings in a healthy fistula and indicate blood flow. Patients are instructed to consult a physician immediately if either the bruit or thrill appear reduced or absent. *See* https://www.azuravascularcare.com/infodialysisaccess/what-is-a-dialysis-fistula-bruit/ (last visited April 25, 2025).

and any defenses become immaterial," and the moving party is entitled to summary judgment. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671(10th Cir. 1998).

A.    Claim of Excessive Force

Both parties agree, excessive force claims arising under the Fourth Amendment must be analyzed under an objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). The question to be asked is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation." *Id.* at 387. The use of force at issue here is the handcuffing performed by Sergeant Jenkins, and the question for the Court is whether Sergeant Jenkins' handcuffing of Mr. Davis was objectively reasonable in light of the facts and circumstances. In determining whether Sergeant Jenkins' use of force was reasonable, the facts the Court should consider are: 1) the severity of the crime at issue, 2) whether the suspect poses an immediate threat to the safety of officers and others, and 3) whether he is actively resisting arrest. *Graham*, 490 U.S. at 396. Under this test, the Court must analyze the totality of the circumstances. *Plumhoff v. Rickard*, 572 U.S. 765, 2020 (2014).

Under the facts presented, Sergeant Jenkins arrived at a chaotic scene where Officer Lynch had his gun drawn and was ordering individuals to "get on the ground!" (Docket No. 41 at 14). Officer Lynch then directed the arriving officers to a gun on the ground and indicated that it was Mr. Davis's gun. *Id.* Factor number one under *Graham* is the severity of the crime at issue. Mr. Davis was armed and pointing his weapon at individuals during an altercation, *id.* at 13, 16, 17, 19

and 20, *see also* Docket No. 50 at 11; Docket No. 41-10 at 3, 8, 14, 28; and Docket No. 41-21, which, as Defendants argue, is a felony in Oklahoma.[4] Plaintiff does not dispute that Mr. Davis arrived on the scene with a gun. (Docket No. 50 at 11). Plaintiff initially disputes that Mr. Davis pointed his gun at anyone, *id.* at 5; however, in her additional facts Plaintiff indicates that Mr. Davis told 911 dispatch that he was "holding a weapon on the assailants." *Id.* at 11. Despite the fact Mr. Davis had a license to carry a firearm, waiving a gun, or pointing it at individuals during an altercation is severe and weighs in favor of Defendant Jenkins.

The second factor under *Graham* "is undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force." *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017). This factor looks at the immediate threat the suspect poses to officers and others. Plaintiff argues the evidence shows that Mr. Davis posed no immediate threat to Sergeant Jenkins or anyone else, (Docket No. 50 at 15), which is true when viewing this case in hindsight. However, reasonableness is analyzed from the perspective of the officer on the scene rather than with 20/20 vision of hindsight. *Plumhoff* , 572 U.S. at 775. While Mr. Davis was on the ground when he was handcuffed, officers on the scene still had to complete their investigation of a brawl in the street in which at least one individual had a gun. (Docket No. 41 at 19). The Supreme Court has determined that handcuffing during an investigation does not violate the Fourth Amendment. *See Muehler v. Mena*, 544 U.S. 93, 100 (2005) (handcuffing was an appropriate response to officer-safety concerns even during investigative detentions). Furthermore, the Tenth Circuit has held "[u]nder the second factor, an officer may use increased force when a suspect is

---

[4] *See* Okla. Stat. tit. 21 § 1289.16 - Felony Pointing Firearms, which makes it unlawful to point a firearm "at any person . . . for the purpose of threatening . . . or with any malice or for any purpose of injuring, either through physical injury or mental or emotional intimidation or for purposes of whimsy, humor or prank, or in anger or otherwise . . . ."; and Okla. Stat. tit. 21 § 645 - Assault and Battery with a Deadly Weapon, which provides in pertinent part: "every person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault, battery, or assault and battery upon the person of another with any sharp or dangerous weapon . . . upon conviction is guilty of a felony . . . ."

armed, repeatedly ignores police commands, or makes hostile motions towards the officer or others." *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020). Once the chaotic scene was clear and officers concluded their investigation, Mr. Davis's handcuffs were removed. (Docket No. 41 at 20). Accordingly, the second factor also weighs in favor of Defendant Jenkins.

The third *Graham* factor is whether the suspect was actively resisting arrest. The Court agrees that Mr. Davis was mostly compliant and cooperative with officers on the scene and that there was no indication he was resisting. Although Defendants argue that Mr. Davis may have been less than compliant when initially ordered to drop his gun, they concede that he did comply. In viewing the evidence, even in the light most favorable to the Plaintiff, Sergeant Jenkins arrived to a highly chaotic scene where Officer Lynch had his weapon drawn and was still ordering various individuals to comply. Officer Lynch directed Sergeant Jenkins to Mr. Davis and informed him that Mr. Davis had a gun. Sergeant Jenkins then applied handcuffs to Mr. Davis while an investigation into the altercation was undertaken. All of this is reasonable in light of the facts and circumstances present here.

Finally, the question turns to whether the handcuffing of Mr. Davis was reasonable given his medical condition. Plaintiff argues "[h]andcuffing Mr. Davis behind his back, tightly and directly around the fistula . . . posed a serious risk of exacerbating his pre-existing condition, and was objectively unreasonable." (Docket No. 50 at 16). However, the facts presented indicate that the handcuffs were not excessively tight nor where they directly around the fistula. (Docket No. 41 at 15 and Docket No. 42 at 13). Furthermore, there is no indication in the records that establishes Sergeant Jenkins **knew** that handcuffing Mr. Davis with a fistula posed a serious risk of exacerbating his condition. Plaintiff alleges in her Response as well as at the oral hearing that this case is analogous to the case of *Fisher v. City of Las Curces*, 584 F. 3d. 888 (10th Cir. 2009). In

12

*Fisher*, Robert Fisher accidently shot himself in the stomach and in the bicep prior to officers arriving on the scene. *Id.* at 891-92. When officers arrived, they assessed Mr. Fisher and his injuries with one officer doing his best to staunch the bleeding coming from Mr. Fisher's stomach and bicep, noting that Mr. Fisher's bicep was "quickly swelling" and indicating to the other officer that a bullet might still be lodged there. *Id.* at 892. Despite these obvious injuries, officers still ordered Mr. Fisher to "lay flat on his wounded stomach and spread his arms over his head." *Id.* When Mr. Fisher did not comply because he physically could not do so, officers proceed to handcuff him behind his back, which took force to do as Mr. Fisher's swollen bicep would not allow for the movement. *Id.* The manner of handcuffing, combined with his wounds, caused Mr. Fisher excruciating pain. *Id.* While the Tenth Circuit agreed with the district court that "the initial decision to handcuff Fisher was not unreasonable . . . the manner in which the officers handcuffed Fisher . . . constituted excessive force." *Id.* at 893. The Tenth Circuit ultimately concluded that a reasonable jury could find that the officers employed greater force than reasonably necessary under the circumstances; however, the Tenth Circuit also noted "[w]e hasten to add this might be a very different case if the officers had no knowledge of Fisher's injuries . . . ." *Id* at 896. The facts in *Fisher* are clearly distinguishable from the present case.

In this case, the record indicates that Sergeant Jenkins definitely knew that Mr. Davis had a kidney transplant. Despite this, Mr. Davis did not appear in distress, and he was physically capable of standing, sitting, and getting on the ground when instructed to. There is nothing in the record indicating that Mr. Davis's kidney transplant caused him to need immediate medical assistance for which handcuffing posed a serious risk of exacerbating his condition. Nonetheless, the record does show that Sergeant Jenkins allowed Mr. Davis to lay on his side while handcuffed, assisted him in getting up from the ground, helped him into the patrol car, and told him he could

sit sideways for his comfort. (Docket No. 42 at 13). This demonstrates that Sergeant Jenkins allowed some accommodations to prevent possible injury based on Mr. Davis's kidney issues.

Whether Sergeant Jenkins knew Mr. Davis had an AV fistula is debated, but he was aware Mr. Davis had something protruding on his arm. (Docket No. 41 at 22). Based on this knowledge, Sergeant Jenkins' used minimal force to place handcuffs on Mr. Davis, checked that they were not too tight by placing his fingers between the cuffs and Mr. Davis's wrist, and then double locked the cuffs to assure they would not tighten up. (Docket No. 42 at 13). Furthermore, Sergeant Jenkins placed the handcuffs very low on Mr. Davis's wrists "essentially on his hands" away from the protrusion on Mr. Davis's wrists. *Id.* Based on the evidence presented, Sergeant Jenkins did make accommodations to Mr. Davis based on the health concerns he was aware of. There is nothing in the record to suggest that Sergeant Jenkins knew that handcuffing Mr. Davis posed a serious risk of exacerbating Mr. Davis's medical condition. Furthermore, there is nothing in the record to suggest that Sergeant Jenkins even knew what an AV fistula was. While a fistula is not an uncommon medical device, it is not common enough that the general population would know what it is and its implications. Accordingly, Sergeant Jenkins is entitled to summary judgment as to Plaintiff's Fourth Amendment excessive force claim.

B.    Claim of Deliberate Indifference as to Serious Medical Need

The Fourteenth Amendment guarantees pretrial detainees the same degree of medical attention as the Eighth Amendment provides to inmates. *See Bell v. Wolfish*, 441 U.S. 520, 535-37, (1979). This means, that the Fourteenth Amendment may be violated in instances where an officer is deliberately indifferent to a pretrial detainee's serious medical needs. *See, e.g., Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315-17 (10th Cir. 2002); *Prado v. Lane*, 98 F. App'x 757, 759-60 (10th Cir. 2004) (unpublished); *Est of Booker v. Gomez*, 745 F.3d 405, 433-34 (10th Cir. 2014).

To succeed on a claim of deliberate indifference to a serious medical need, a plaintiff must satisfy "both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quotation omitted). "First, the detainee must produce objective evidence that the deprivation at issue was in fact sufficiently serious . . . . A medical need is sufficiently serious if it is one . . . that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Est. of Booker,* 745 F.3d at 430 (quotations omitted); see also *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (same). "Second, under the subjective component, the detainee must establish deliberate indifference to his serious medical needs by presenting evidence of the [officer's] culpable state of mind." *Est. of Booker*, 754 F.3d at 430 (quotation omitted). He must show that the officer "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). "The Supreme Court [has] cautioned that 'an inadvertent failure to provide adequate medical care' does not rise to a constitutional violation." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

For purposes of his MSJ, "Sergeant Jenkins concedes that Mr. Davis had a serious medical condition, therefore Plaintiff has satisfied the first component." (Docket No. 42 at 18). Defendant Jenkins, however, argues that Plaintiff cannot meet her burden as to the subjective component. *Id.* To satisfy the subjective component, Plaintiff must show Sergeant Jenkins knew of and disregarded an excessive risk to Mr. Davis's health or safety. *Farmer,* 511 U.S. at 837. Sergeant Jenkins "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer,* 511 U.S. at 837). Here, the evidence shows that Mr. Davis did not complain of pain to Sergeant Jenkins, nor did he display signs or symptoms that he was

suffering any medical condition. Mr. Davis did affirmatively state that he had a kidney transplant, which Sergeant Jenkins made accommodations for, as discussed above. Mr. Davis did not request medical attention from Sergeant Jenkins and appeared to tolerate the handcuffs behind his back when he was told that they would not be removed or placed in front of him. Sergeant Jenkins testified that he saw something on Mr. Davis's arm that he believed to be a cyst, a deformity of some kind, or a growth or other abnormality. (Docket No. 41 at 15-16 and 41-8 at 3). From the evidence produced by the Defendants, Sergeant Jenkins testified that he was not aware that Mr. Davis would need emergent medical care, it was his understanding that Mr. Davis refused medical treatment at the scene, and when he was handcuffing Mr. Davis he noticed a "cyst, growth, some sort of abnormality" which caused him to place the handcuffs down below it "enough to where it wasn't on [it]." (Docket 41-8 at 3, 5, and 6). Plaintiff does not present any evidence that Sergeant Jenkins knew Mr. Davis had an AV fistula, or that Sergeant Jenkins knew that an AV fistula was a serious medical condition that required medical attention. Plaintiff points to Mr. Davis's "Citizen Complaint" as evidence that he told Sergeant Jenkins of his AV fistula, however, the Citizen Complaint does not specify Sergeant Jenkins as the individual Mr. Davis informed. (See Docket No. 50-5). We know from the record that Mr. Davis told Officer Bemo he had an AV fistula that could not be restricted, but there is no evidence that Sergeant Jenkins knew this. (Docket No. 50-6 at 42-43). Plaintiff has not presented any evidence that Sergeant Jenkins was aware that Mr. Davis had an AV fistula on his arm and simply disregarded it, or that Sergeant Jenkins even knew what an AV fistula was. There is nothing in the record before the Court to suggest that Sergeant Jenkins knew of and disregarded an excessive risk to Mr. Davis's health or safety as it related to his AV fistula. As to Mr. Davis's kidney issues, there is evidence that Sergeant Jenkins made

16

accommodations to Mr. Davis for his kidney issues, and therefore was not deliberately indifferent to this medical condition.

Furthermore, there is no evidence in the record that shows Mr. Davis suffered a substantial harm as a result of the Defendants' interactions with him. The medical records presented by Defendants show prior to the incident at issue, Mr. Davis underwent a fistulagram[5] due to stenosis[6] on March 8, 2018. (Docket No. 41-12). Furthermore, he was seen on June 1, 2018, at Cherokee Three Rivers HC to follow up on his fistula. (Docket No. 41-13). These records note that Mr. Davis was not using his fistula due to renal transplant and was told he may be able to have the fistula removed. *Id.* Medical records from the date of incident at issue show that Mr. Davis was seen at Wagoner Community Hospital on September 18, 2018, complaining of pain and swelling to fistula due to handcuffing. (Docket Nos. 41-11 at 4). He told the staff at Wagoner Community Hospital that he has not been on dialysis since having a kidney transplant and that he was supposed to get a referral soon to have the fistula removed. *Id.* at 5. Soft tissue swelling was noted in his left wrist and Tylenol and ice were recommended for pain. *Id.* Mr. Davis was told to follow up with his primary care provider "this week to discuss options for fistula." *Id.* On September 24, 2018, Mr. Davis underwent a second fistulagram due to stenosis. (Docket No. 41-14). There was no indication from the records that this subsequent fistulagram was related to the incident at issue.[7]

_____

[5] A fistulagram is a minimally invasive procedure used to identify problems with blood flow through an arteriovenous fistula or graft. "It involves the placement of a tiny needle into the fistula/graft and injection of contrast dye which enables visualization within the fistula/graft." A fistulagram may reveal "that the blood flow is not high enough, pressures in the vein are too high or the graft is clotting frequently." https://www.emoryhealthcare.org/centers-programs/radiology/diagnosis/fistulagram (last visited April 28, 2025).

[6] Stenosis is "the narrowing of a passageway in [the] body that prevents a certain substance or structure (like blood or nerves from passing through as easily as it should." https://my.clevelandclinic.org/health/diseases/stenosis-stricture (last visited April 28, 2025).

[7] Plaintiff argues that Mr. Davis's verified responses to Interrogatories, which indicate that as a result of the incident at issue he was "forced to undergo multiple surgeries to repair damage to his AV fistula" support his claim that his subsequent procedures were necessitated by Defendants' actions; however, Plaintiff also indicates that he is not a physician and therefore not qualified identify the damages caused by Defendants. (Docket No. 50-4 at 7). Plaintiff's

*Id*. On March 11, 2019, Mr. Davis underwent a third fistulagram due to stenosis. (Docket Nos. 41-16 and 50-3 at 1). There is no indication from the records that this subsequent fistulagram was related to the incident at issue. *Id.* On June 21, 2019, Mr. Davis underwent a ligation of his AV fistula due to an aneurysm located on his fistula.[8] (Docket Nos. 41-17 and 50-3 at 4-7). There is no indication from the records that this fistula aneurysm was related to the incident at issue. *Id*. Moreover, on October 12, 2018, Mr. Davis was seen for a renal sonogram as a follow up from his kidney transplant. (Docket No. 41-15). The results of this sonogram showed there was no change in his transplanted kidney. *Id.* There is no evidence presented in the record indicating Mr. Davis suffered substantial harm as a result of Sergeant Jenkins' handcuffing. While he was seen at an ER following the handcuffing and complaining of pain and swelling to his fistula, the records do not indicate the fistula was damaged or not functioning properly.[9] Therefore, any injury Mr. Davis may have had as a result of his detention by officers would be considered *de minimis*. Accordingly, Sergeant Jenkins is entitled to summary judgment on Plaintiff's claim for deliberate indifference.

C.    Qualified Immunity

Additionally, Defendant Jenkins contends he is entitled to qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine is intended "to shield officials from

counsel admitted at the oral hearing, that apart from this Interrogatory, there is no evidence to support Plaintiff's claim that Mr. Davis had to undergo additional surgeries as a result of being handcuffed on September 18, 2018.

[8] An aneurysm is a "weak spot in the wall" of an AV fistula that "can expand and eventually burst if not treated." https://www.azuravascularcare.com/infodialysisaccess/aneurysms-and-pseudoaneurysms-in-dialysis-access/ (last visited April 28, 2025).

[9] The evidence of "obvious thrill" in the medical records suggests there was adequate blood flow through the fistula.

harassment, distraction, and liability when they perform their duties reasonably," while also ensuring that officials who "exercise power irresponsibly" are held accountable. *Id*. Defendants are entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)). Qualified immunity protection applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting).

"When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established." *Baca v. Casper*, 128 F.4th 1319, 1324-25 (10th Cir. 2025) (internal quotation marks omitted). A constitutional right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna,* 577 U.S. 7, 11 (2015). A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a constitutional right. *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018).

The Court agrees that alleged violations of the Fourth and Fourteenth Amendments were clearly established by law at the time of Mr. Davis's alleged injury. Claims for excessive force and deliberate indifference are not novel within this Court. However, to secure the denial of qualified immunity, Plaintiff bears the burden of establishing both prongs. *Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009).

As discussed above, Plaintiff fails to present evidence that Sergeant Jenkins' actions violated a constitutional right by failing to show that Sergeant Jenkins' use of force was

unreasonable. As set forth above, Sergeant Jenkins used minimal force to handcuff Mr. Davis, and the handcuffing was not unreasonable or excessive based on the totality of the circumstances. Even though Mr. Davis informed Sergeant Jenkins he had a kidney transplant, this medical condition was not so serious that handcuffing Mr. Davis behind his back posed a serious risk of exacerbating his preexisting condition. Furthermore, Sergeant Jenkins did provide Mr. Davis accommodations to account for his kidney condition by allowing Mr. Davis to lay on his side rather than his stomach, and to sit sideways in the patrol car for comfort. There is no evidence to suggest that Sergeant Jenkins applied any pressure or force to Mr. Davis's back or kidney area, nor was he denied medical treatment. Additionally, Plaintiff fails to establish that Sergeant Jenkins knew that Mr. Davis had an AV fistula on his wrist and knew what that meant with regards to handcuffing. Sergeant Jenkins testified that he saw a "cyst, growth, some sort of abnormality" on Mr. Davis's wrist which caused him to place the handcuffs down below it "enough to where it wasn't on [it]," but there is nothing in the evidence to suggest that Sergeant Jenkins was aware of any medical condition in which handcuffing Mr. Davis would pose a serious risk of exacerbating a preexisting condition. (Docket 41-8 at 3, 5, and 6). As such, there is no violation of the Fourth Amendment and Sergeant Jenkins is entitled to summary judgment and qualified immunity as to Plaintiff's excessive force claim.

Furthermore, as discussed above, Plaintiff fails to show that Sergeant Jenkins was deliberately indifferent to a serious medical need or caused serious medical harm. As such, there is no violation of the Fourteenth Amendment and Sergeant Jenkins is entitled to summary judgment and qualified immunity as to this claim.

IV.    Conclusion

For the foregoing reasons, the Court concludes that Sergeant Jenkins is entitled to summary judgment on all claims. The undisputed material facts, even when viewed in the light most favorable to Plaintiff, do not establish a violation of Mr. Davis's Fourth or Fourteenth Amendment rights. The use of force, consisting solely of handcuffing Mr. Davis during an ongoing investigation, was objectively reasonable under the circumstances. Moreover, the record fails to show that Sergeant Jenkins was deliberately indifferent to a serious medical need or that Mr. Davis suffered substantial harm as a result of the handcuffing. Plaintiff has not met her burden to demonstrate that Sergeant Jenkins violated clearly established law, and therefore, he is also entitled to qualified immunity. Accordingly, summary judgment is GRANTED in favor of Sergeant Jenkins on all claims.

IT IS SO ORDERED this 29th day of April, 2025.

_____
D. Edward Snow
United States Magistrate Judge

21